The argued case this morning is No. 2012-3088, Cotter v. Office of Personnel Management. Mr. Flamm. Good morning, Your Honors. May it please the Court, my name is Benjamin Flamm and I represent the appellant, Special Agent Robin Cotter. Welcome. Ms. Cotter is disabled by virtue of her alcoholism, although I am happy to report that this week she is two years sober. That will come into play later. When the agency was notified by Ms. Cotter about her disability, her security clearance was suspended pending the agency's investigation into whether it should be permanently revoked. In response, she was placed on paid administrative leave. Then, the agency proposed placing her on unpaid leave. At that point, Ms. Cotter made a reasonable accommodation request. That request was ignored by the agency. At that time, we petitioned the Merit System Protection Board, which found that it did not have jurisdiction to adjudicate her affirmative defense of disability discrimination. To go back one step, when you say the request was ignored, was it ignored or we're told that there was no possibility of reasonable accommodation? Well, the record, Your Honor, goes both ways. On one hand, in OPM's briefs to the Merit System Protection Board, it was ignored because they didn't even qualify her as an individual with a recognized disability. I'll get into that analysis in more detail later, but they questioned whether or not her completion of a qualified treatment program qualified her as an individual entitled to an accommodation. What I can tell the court is that no interactive process of any kind took place as set forth by the ADA and incorporated by the Rehabilitation Act in Section 501. Has Ms. Cotter been reinstated? She was reinstated during the proceedings at the Merit System Protection Board. So, what is she here for? Is she complaining about procedure when she's been made whole? Why is she here? Well, under the Jones Doctrine from this court, the Merit System Protection Board does not have the authority to look into the underlying reasons that the agency suspended an individual's security clearance. That's not why Ms. Cotter is here. In other words, you're complaining about the state of the law rather than representing a client who has been harmed. Not exactly, Your Honor, because during the four months that Special Agent Cotter was placed on unpaid leave, she was indeed harmed. She suffered a pecuniary harm, a loss of her salary. In other words, she hasn't received back pay? That is correct, Your Honor. So, the reason we're here is to bring to this court the question of whether or not the board below has the authority to look into whether or not... Has the back pay issue, was that raised at the board level? It seems to me you're arguing sort of a theoretical process issue rather than her claim that she has been deprived of pay and benefits. Was the pay and benefits issue raised below and decided below? Your Honor, it was raised below in the briefs by me on behalf of Special Agent Cotter. The request for relief was back pay and emotional distress as the board has the authority to award. However, because the board stopped short by finding it didn't have jurisdiction to consider her affirmative defense, that question was never addressed. So, your theory, as I understand it, is that a reasonable accommodation should have either been a non-secure position where she would have continued to be paid or a reasonable accommodation could have been paid leave rather than unpaid leave. Is that right? Those are two examples. Yes, Judge. For example, the agency might rightfully say indefinite paid leave is not reasonable and I would not necessarily disagree with that. However, the care, custody and control of the process by which a special agent such as Ms. Cotter gets her security clearance back or doesn't is within the agency's purview. As such, I would argue it's reasonable for the agency to check with itself, perhaps every 30 days, how is the process going. Are there positions that have opened up so that there is actually, as intended by the ADA, a dialogue that goes back and forth? Well, is the process problem harmless if there was no non-secure position? It is, Your Honor, because of the other accommodations that were possible and in fact requested. Ms. Cotter did not only request transfer to a non-sensitive position as an accommodation. She clearly set forth, as is even recognized in the Administrative Judge's decision from the Board, that alternatively short periods of unpaid leave, for example 30 days, would be another possible accommodation. So, we can't stop in this inquiry short by just saying if there wasn't a position, then the discussion ends. In addition, the only answer we got, and that was later in the game, was that there were no available positions that were non-clearance positions at the Boston Field Office. The rest of the Northern Region wasn't even looked into. So, if we agree with you that the Board had jurisdiction to consider this, then does the Board consider, in the first instance, whether she was entitled to an interactive process? Or are you asking us to say to the Board she's entitled to an interactive process and it's up to you to decide whether she got one? I think both would be wonderful, but the second is what we're here to ask the Court to do, is to tell the Merit System Protection Board, in cases like these where a qualified individual with a disability makes a reasonable accommodation request, they are indeed entitled to a process, an interactive process to determine whether or not the agency can accommodate these employees short of a showing of undue hardship. What is your authority for seeking an interactive process? The Americans with Disabilities Act sets forth in Section 12.112.B 8, to start with, so subsection 8, that refusing to provide accommodation is discrimination. It is a discriminatory act. And then when you go to Section 10, it gives examples, and this is straight from Congress, they give examples about what undue hardship is. In other words, have you made up the idea of interactive process? I have not, Your Honor. Then where is the authority for interactive process, which seems to be your main point, the first point in your brief? Well, to start with, the Seventh Circuit, on September 7th of this year, just reversed itself to fall in line with the 2002 U.S. Supreme Court decision, USAIR v. Barnett, in which the U.S. Supreme Court decided that transfers... I'm sorry, Judge. The interactive process is provided for in the text of the Americans with Disabilities Act, which provides a cause of action at the Merit System Protection Board. In high verba, as they say, in precisely that language? I'm paraphrasing, Your Honor. I'm sorry? I'm paraphrasing, Your Honor. So, as I was saying, the Seventh Circuit just reversed itself to fall under the Barnett ruling from 2002 and said that a disabled employee is indeed entitled to a transfer unless there's a showing of undue hardship, that it's mandatory. Well, to focus on the particular facts as they arose here, let's assume, for the sake of the question that I'm going to ask, that the government's position that there was no suitable, sufficiently required security clearance that fit within whatever guidelines they tell us they were obliged to follow. And I think I heard you say that a period of administrative leave without pay could be contemplated under those circumstances. I think you said a month. Is what it all gets down to that four months without pay was not reasonable while this process was proceeding, and the relief that's being requested is not the entire four months of back pay, but whatever period might have been an unreasonable extension of the period of a combination of rehabilitation and reinstatement? Well, first, Your Honor, may I ask a clarifying question? Please do. So, I just want to make sure I heard your question correctly. Okay. Questions usually go in the other direction. That's all right. Yes, Your Honor. I just want to make sure I understood the question so I can do my best job to answer it. I may or may not answer, but proceed. So, you asked whether or not paid or unpaid administrative leave was the accommodation we requested. The accommodation we requested was continued paid leave in short periods, not unpaid leave. While the agency was trying to determine whether there was a suitable position during this period, even though, for the purpose of my question, they were correct in their determination that there was not a suitable position that didn't require security clearance. Well, they were correct, Your Honor, in that there was no such position in the Boston office, but they did not inquire into the rest of the region. Within the area that it is reasonable for them to have searched in. That is, not to get into the facts of whether they did or didn't, but just assuming, presuming that that decision was at least sufficiently correct to require support on appeal with all of the deferential aspects and the considerations of EGAN and the complications of where discrimination fits in security claims. With all of those things, if it turns out that your client doesn't prevail on that point, I'm trying to understand what the position is of entitlement. Should there, upon the reinstatement after four months, in your view, been full back pay paid, or is your position that four months was too long? Your Honor, I think four months, to answer your question immediately, yes, I think back pay should be one of the remedies, in addition to emotional distress, because this was a case that involves employment discrimination law. So as I understand it, what you're talking about is that what you wanted was the interactive process, and through that interactive process, you wanted them to consider a possible continuum of reasonable accommodations. Anywhere from placing her in a different position in the Boston office, if it was available, to placing her somewhere else, to giving her paid leave, to giving her partial paid leave. So that, in other words, there's still a continuum that would have to be considered under your theory, right? Of course, Your Honor. And you're not asking us to decide where on that continuum a reasonable accommodation might fall, you're asking us to just tell the board that they had jurisdiction to determine whether a reasonable accommodation was provided. That's correct, Your Honor, that's exactly what we're putting forth. Judge Newman, I believe you were actually on the bench for the Zadzileski case earlier this year. In that decision, this court found that the administrative judge below, at the Merit System Protection Board in that case, recognized that the question of whether an agency had a duty to seek a non-sensitive position for an employee was indeed within the board's competence. As such, it logically extends that other potential accommodations might be within the board's competence as well, and I would argue that they are. The bottom line is that the ADA was indeed enacted to give individuals with disabilities a chance to succeed, level the playing field. And most importantly in this regard, under the Americans with Disabilities Amendment Act of 2008, the definition was altered a bit. A qualified individual didn't just have to be qualified for the position they hold. They could be qualified for the position they hold or desire. So the agency's argument that she wasn't qualified for her position, so she wasn't entitled to an accommodation, fails. And that's where Barnett and the Seventh Circuit case, EEOC v. United Airlines, which was decided on September 7th, sort of all come in to paint a whole picture. Okay, let's hear from the government.  Your Honor, may it please the Court, we respectfully request that you affirm the decision of OPM, because there is no requirement on OPM to transfer Ms. Cotter or place her in a non-sensitive position. In the case of an adverse action that is taken as a result of a loss of a security clearance, EGAN was clear. This Court can review three things. They can review whether a security clearance was revoked, whether a security clearance was a requirement of the job, and whether the procedures set forth in 7513 were followed. None of this is in dispute. Ms. Cotter does not challenge this. To the extent that EGAN recognizes the possibility that a court can evaluate whether or not transfer is feasible, that right to evaluate whether transfer is feasible is under the agency's existing regulations and policy. In this case, OPM has no policy requiring the interactive process. Well, wait a minute. What do you mean it has no policy? ADA and the Rehabilitation Act create those requirements. By law, they have to have that policy. It doesn't have to be a written internal policy, but there's a legal requirement. Yes, Your Honor. We're not saying that OPM does not have to follow the ADA or abide by the ADA, but what is contemplated in EGAN is the jurisdiction to review executive branch regulations and policies that are implicated in the case of transfer for when they lose a security clearance. You're saying if anybody has a security clearance for any reason, then every agency is free to discriminate, regardless of what discrimination law you're talking about, and no one can ever review it? No, Your Honor. We're not saying that every agency is free to discriminate. In this case, it's not discrimination if you treat everyone equally. What in this case it is is that when somebody loses a security clearance, OPM has no formal written policy requiring them to engage in an interactive process or transfer to a non-sensitive position. That's not discrimination. But the law requires that, correct? If someone's disabled and they fall within the definition of a disability, the law requires an interactive process. Isn't that true? In the case of a disability discrimination claim, yes. If somebody is disabled making a separate disability discrimination claim, they are, and they have satisfied the elements, the law requires an attempt to find reasonable accommodation and such an interactive process. Okay, so we got that. So it's absolutely required. So regardless of whether OPM has an internal policy saying that's required, it's required, right? It's required in the context of a disability discrimination claim, but that's not what's here, Your Honor. What's here is a challenge to Ms. Cutter's challenge to her indefinite suspension, and she was indefinitely suspended. It's a challenge to whether she was paid, whether it was with pay or without, not that it was indefinite. She challenged, she's not challenging, she wasn't challenging the loss of her security clearance as it relates to this accommodation. She was challenging OPM's decision to indefinitely suspend her without pay. So that is the action before the board. Her challenge was to OPM's decision to indefinitely suspend her without pay. And in that case, when, again it's very clear, when a security clearance, the adverse action such as an indefinite suspension without pay arises from the loss of a security clearance, the review is limited to three things. Whether security clearance is revoked, whether the security clearance... She's not, with respect to this appeal, there is no question about her asking us to review whether she should have lost her security clearance. The question is whether, given that she had lost her security clearance, that she was going to try to get back under a different avenue. Given that, what accommodation should be given to her if in fact she was disabled? And our position is that OPM was required to follow its own policies and regulations, and it did that. It followed its own policies, and in fact in this case it did engage in a search of the entire commuting area, northeastern area, to find a position for Ms. Cotter and found that there were no non-sensitive positions. You're not arguing that this case is moot because she's been reinstated? No, we're not, Your Honor, because in this case Ms. Cotter's... We could, but in this case Ms. Cotter's contention is that her release is incomplete because the reference to her indefinite suspension was not removed and she was not paid for the time that she was off. I don't see that in Will Grace, though. I don't see that they're arguing back pay. They're arguing this interactive process. They are arguing their brief, yes, Your Honor, is devoted entirely to interactive process. In the second section of their brief they do mention the Cooper v. Navy and then the follow-on of Brunning v. VA where this court has continuing jurisdiction when release is incomplete and they do not receive full back pay. That is why we did not argue that her case would be moot. That being said, one could make the argument that by failing to deliberately address the back pay, and we'd submit that argument now, she has failed to pursue this. You really can't make that argument because you didn't make it in your red brief. To the extent that it's jurisdictional we can make it at any time, but we did not make that argument in our brief because we saw her as saying that her relief was incomplete and therefore did not argue that the case was moot. You rely on Griffin and yet Griffin itself says that if there was any rule or regulation or law or statute that provided the relief that it would be a different, that we'd be looking at a different issue and a different animal. How do you rely on Griffin when it was decided before the ADA was passed, before the Rehabilitation Act expressly adopted the ADA provision, before the EEOC regs outlined the interactive process? How can Griffin be relevant? Well, Griffin is relevant in the sense that, the question is two-fold, in the sense that Griffin is relevant in the sense that that statement from Griffin that Your Honor references, that you can review whether the agency has adopted an existing policy. It doesn't say agency policy, it says statute or regulation or rule. But Griffin also goes on right after that passage to indicate that the Rehabilitation Act is not such a policy. That's because it was before the ADA was passed and before the Rehabilitation Act adopted the ADA and adopted all of its regulations. Yes, Your Honor, we would concede that Griffin was, did come about before the ADA was passed. But that, in that case, there's nothing in the ADA that shows that it was intended or in the Rehabilitation Act when it adopted the ADA standards that shows that it was intended to contemplate review in this instance. In Egan, they recognized that it was policies and procedures and that contemplated executive branch policies and procedures. And it said in Egan that there's no indication in the legislative history or anything about the ADA and the Rehabilitation Act, indicating that it intended to trump the executive branch discretion that was reserved and recognized in Egan. And as Egan recognized, it has to come from express congressional enactment and there was none. I'm just so confused. How can ADA not be an express congressional enactment? How can that not be an express congressional enactment? It is an express congressional enactment, but in Egan they recognized it to the extent that Congress wants to interfere in this area. They must do it so expressly and there's nothing in there that in the ADA or the Rehabilitation Act that even references security clearance. Because Egan contemplated executive branch policies and requirements the executive branch imposes on itself. And that is what was contemplated by Egan when they said they can review did the agency follow its own policies. In this case, OPM followed its own policies. They didn't discriminate in the sense that they treated all employees with security clearance equally. How do we know they didn't discriminate? The board refused to consider whether they discriminated. The board did consider whether or not OPM... She's not making a claim of disparate treatment discrimination. That's very clear. So when you say they treated everybody equally, that's not even irrelevant. She's not making a claim of disparate treatment discrimination. She's waived her discrimination claims in this case by coming here. But OPM, they did look at OPM's policies. And the board did look at that and did look at whether or not transfer was feasible and did look at the fact that OPM had considered that transfer was not feasible. How do you address Judge Newman's recent decision in Adams, the decision from August in which she specifically said that Egan does not mean that the board loses all authority and jurisdiction in employment cases whenever there's a security clearance involved. That as long as we're not inquiring into the propriety of taking away the security clearance, there is still jurisdiction. The board does, Egan does preclude jurisdiction in all cases that require looking into the national security issues. Exactly. Yes. Well, I'll give you that. But how do you deal with Judge Newman's recent decision that says when it's not necessary to look into the underlying security clearance justification that the board retains jurisdiction? Are you not familiar with that case? I apologize, Your Honor. I'm not familiar with the decision in Adams. Was it cited in the blue brief? Well, it came out after. I don't, yeah, I don't believe so. It came out after the gray brief. It just came out. Then I apologize, Your Honor. But that's what Egan said as well. Even without that elaboration because it was a particular issue, the Supreme Court made very clear in Egan that they weren't removing from federal employees all access to the complex structure that's been designed to protect them. They were just saying for security clearance, that's up to the agency. And that's not challenged here. It's not challenged that the suspension was appropriate during the period of rehabilitation as it turned out. I didn't see any challenge that there was undue delay in proceeding towards reinstatement. It still seems to me, although I'm not so sure that Mr. Flam agrees, that the issue is whether there should or should not have been pay, even if the agency did reasonably hold there is no employment, no alternative during this period. So it seems to me that, and I'm rather surprised at your argument because it seems to me that in your brief, you are quite willing to acknowledge that the MSPB, OPM, and so on, the agency, have a good deal of authority to assure adequate protection and particularly to respect the requirements of the ADA, which was not a casual enactment of existing law. It was designed to provide additional protections. And I think you're saying that if security clearance is involved, never mind, there are no additional protections. That's not my intention, nor our intention, Your Honor. We're not in any way suggesting that OPM does not have to follow the ADA or is free to discriminate because a security clearance is involved. That would be a discrimination claim, and that's not within this court's jurisdiction. That's not what's brought forward here. This is a challenge to the indefinite suspension, and that indefinite suspension is a challenge to whether or not OPM followed proper procedures in indefinitely suspending her without pay. The distinct disability discrimination was waived when Ms. Cotter chose to come to this court. What we're arguing about is this case. Did OPM follow its policies and procedures when it indefinitely suspended Ms. Cotter? That's what's on appeal. That's what's properly before the court, and our argument is that they did. We're not in any way trying to say that OPM doesn't have to respect the ADA, doesn't have to treat all employees fairly. But you're telling me it has no policy or procedure to comply with the ADA. It has no policy or procedure to incorporate the requirement of interactive process when an employee suffers an adverse action as a result of a security clearance. And that's a direct violation of the ADA, is it not? No, Your Honor, it's not a direct violation. What you're saying is they don't have to follow the ADA if security clearance is involved. That's what you're saying.  We're not saying that they don't have to follow the ADA if security clearance is involved. What we're saying is that they have to follow their own procedures, and their procedures don't provide for such an interactive process. In this case, there's no showing nor finding, nor is it conceivable to find, that OPM failed to follow the ADA. I mean, the Rehab Act, to the extent that there's a requirement to accommodate an employee, that requirement comes if an employee is qualified. And Ms. Cotter, being that she lost her security clearance, could not perform the essential requirements of her position in this case. Her job required a security clearance that's undisputed because... That's a merit of whether she was entitled to the interactive process. But the board found it had no jurisdiction, so we can't consider that question, right? Just like we can't order them to give her some accommodation. The most we can do is say the board has jurisdiction to consider whether all appropriate procedures, including those under the ADA, were followed. Yes, Your Honor, that is the most you could say. And in that case, it would have to be remanded to OPM, and this court could not decide that in the first instance. And it would have to be remanded, but in this case, Ms. Cotter could not show that she was qualified because she could not perform the duties for the position for which she was hired. And that is what was recognized by this court in Griffith. So with all due respect, Your Honor, I see we're out of time. We respectfully request that you affirm the decision of the MSTB upholding Ms. Cotter's indefinite suspension. Thank you. Any more questions? Any more questions? Thank you, Ms. Joplin. Thank you very much, Your Honor. Mr. Flanagan, you have a little time. Let's make it a couple of minutes. Thank you, Your Honors. I will keep it brief. To address a few points that my sister counsel made, if you turn first to page 240 of the appendix record, heading three in the closing brief of the agency states, the agency was not required to offer appellant paid leave, nor established paid administrative leave would have been an undue burden. If that doesn't scream we're not engaging in an interactive process, nothing really does. Judge Lurie, to address your question earlier that I wasn't able to answer specifically, on page 30 of the appendix record, on the final page of the initial appeal to the board below, in the conclusion and requested remedies section, number four is a request for the board to order payment by OPM for any and all lost wages from the date of her indefinite suspension without pay to the present. And finally, I'll close. The right to be free from discrimination is a fundamental right. We know that all the way back from Yick Wo in the late 1800s. The government should have to use a scalpel. Didn't you waive the discrimination claim by coming to this court? I did, Your Honor. Then why are you arguing discrimination? Because the failure to provide accommodation under the ADA is discrimination. So from a policy perspective, I would urge this court to have the government, in these kinds of cases, we all know that national security is of the utmost importance, especially after 9-11. The government should use a scalpel, though, not a sword, when carving out the national security provision as weighed against the individual workplace and civil rights. You mean a scalpel, not a sledgehammer? Yes, Your Honor. As such, I respectfully request that this... You have certainly waived your right to request any payment for pain and suffering or any emotional distress, have you not? I mean, this really only relates to whether or not the suspension could have been indefinite and without pay. I believe if this is sent back for a rehearing or sent back with directions to the Merit System Protection Board, that they do have the right to grant those forms of relief. We're, again, here to ask for a jurisdictional clarification stating loosely, I would never tell this court what to state, but what we're asking is exactly what was discussed while my sister was up here. EGIN means that the board can't look into why the agency suspended a clearance, because that's within the agency's purview. But that doesn't mean that there's not a discrete alternate issue here. In this case, whether during that investigation into whether she should get her clearance back, was Special Agent Cotter, and for that matter, any federal employee, entitled to an interactive process in accordance with the ADA. Usually, transfer to a non-sensitive position is the best answer, either in the specific office or within the region. But in the alternative, shorter periods or longer periods of continued paid leave while the situation is worked out are ideal. I do respectfully request that this court reverse the board's lack of jurisdiction decision, and to the extent possible, award back pay and any other damages this court sees fit. Unless the court has any other questions? Any more questions? Thank you. Thank you, judges. Ms. Joplin, the case is taken under submission. All rise. The honorable court adjourns until tomorrow morning at 6 o'clock.